UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN RE:

       D-A-M LIQUIDATING CORP., et al.,

             Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


ESTHER DUVAL OF CBIZ MHM LLC, AS
LIQUIDATING AGENT OF D-A-M LIQUIDATING
CORP. ET AL.,

             Plaintiff,

    - against -

VERONICA AGUILAR a/k/a VERONICA DIAZ,
and GALA FINANCIAL SERVICES CORP.,

             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No.:  09-41966 (JBR)

Chapter 11  (Jointly Administered)

Adv. Proc. No.: 1-10-01243 (JBR)


**DECISION AND ORDER ON MOTION TO ENFORCE THE TERMS OF THE
SETTLEMENT AGREEMENT**


JOEL B. ROSENTHAL

United States Bankruptcy Judge


       This matter comes before the Court upon the Motion (Docket # 19) of Esther

DuVal of CBIZ MHM LLC in her capacity as the Liquidating Agent of D-A-M Liquidating

Corp. et al., (the "Plaintiff") for an order enforcing the terms of an agreement with Veronica

Aguilar a/k/a Veronica Diaz and Gala Financial Services Corp. (the "Defendants").  The Plaintiff

alleges that in early November 2010, the parties had reached a resolution of the Defendants'

claim and this adversary proceeding ("agreement"). The Defendants then changed their mind and refused to execute the "Stipulation and Order Resolving (I) Claims By And Between Liquidating Estate and Gala Financial Services Corp. And Veronica Aguilar And (II) Related Adversary Proceeding" (the "Stipulation"), and the Plaintiff seeks enforcement and approval of the agreement. See Statement on Motion To Enforce and Approve Settlement Agreement: Exhibit D: Stipulation (Docket #19).

The Court held a hearing on January 19, 2011, and took the matter under advisement. Based upon the documents submitted, the arguments of counsel, and the memoranda of law, for the reasons set forth below the Court finds the Stipulation enforceable.

## JURISDICTION

The Court has jurisdiction over these core proceedings under 28 U.S.C. §§ 1334 and 157(b)(2) and the Eastern District of New York Standing Order of reference dated August 28, 1986. This Decision and Order constitutes the Court's findings of facts and conclusions of law required by Fed. R. Bankr. P. 7052.

## BACKGROUND

On March 17, 2009, an involuntary petition for relief under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code") was filed against Dial-A-Mattress Operating Corp. (the "Debtor"). On March 26, 2009, the Chapter 7 case was converted to one under Chapter 11 of the Bankruptcy Code.

On September 8, 2009, Gala Financial Services and Veronica Aguilar ("Claimants"), filed Claim No. 253 (the "Gala/Aguilar Claim"), claiming an amount not less than

$20,000 plus estimated commissions of $1,195,060 based upon two alleged contracts.  On

September 8, 2010, the Plaintiff commenced this adversary proceeding to declare the contracts

upon which the Gala/Aguilar Claim is based null and void and otherwise unenforceable against

the Debtor and to avoid and recover payments aggregating $202,580.30, and to equitably

subordinate the Gala/Aguilar Claim to allowed general unsecured claims (as defined in the Plan).

In late October and early November of 2010, the Parties (each through their

respective counsel) negotiated terms of agreement, however the agreed Stipulation was never

signed. On November 29, 2010, the Defendants' Counsel sent an email, indicating that

Defendants would not sign the Stipulation although Ms. Aguilar was still considering the

agreement.

On December 3, 2010, counsel for the Defendants filed a Motion to Withdraw as

Counsel; the Plaintiff opposed the Motion to Withdraw arguing that (i) the Plaintiff had reached

an agreement with Defendants and (ii) the Debtor's estate would be prejudiced by such

withdrawal. At the hearing on the Motion to Withdraw, the Court inquired if a motion to enforce

the agreement was to be filed.

## DISCUSSION

Pursuant to New York law, if there is no express communication of an intent not

to be bound until execution of a document, parties may enter into a binding contract prior to

execution of the document, because a lack of memorization of their agreement in writing will not

prevent contract formation. Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80 (2d

Cir.1985) citing R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69 (2d Cir.1984) ("In any

given case it is the intent of the parties that will determine the time of contract formation. To

discern that intent a court must look to 'the words and deeds [of the parties] which constitute

objective signs in a given set of circumstances.'"); Walker v. City of New York, 2006 WL

1662702, (E.D.N.Y.2006). In reaching its determination, the court in Winston considered these

factors: (1) whether there has been an express reservation of the right not to be bound in the

absence of a writing; (2) whether there has been partial performance of the contract; (3) whether

all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at

issue is the type of contract that is usually committed to writing. Id.

To analyze the words and deeds of the parties which constitute objective signs in

a given set of circumstance, this Court examined the parties' communications through emails and

applied the four prong test of Winston.

## (1) Whether there has been an express reservation of the right not to be bound in the absence of writing

The email communications between Theresa Driscoll, Plaintiff's counsel and Jeff

Morgenstern, Defendants' counsel establish that on November 3, 2010, Mr. Morgenstern

received a draft of the Stipulation to which he replied with a few revisions. See Statement on

Motion To Enforce and Approve Settlement Agreement: Exhibit C: November 4, 2010 email to

Ms. Driscoll (Docket #19). According to an email of November 4, 2010, Mr. Morgenstern

confirmed that the revisions were incorporated into the final document to Mr. Morgenstern's

satisfaction. Id. There were no further open points for negotiation. **Mr. Morgenstern did not**

**communicate a reservation of the right not to be bound in the absence of a writing**. The

writing itself was finalized and therefore memorialized the agreement in the Stipulation.

Contrary to Mr. Morgenstern's statement of his client's hopes and understandings

that she was not bound until she signed the documents, nowhere in any communication with

Plaintiff's counsel did he state any reservation not to be bound in the absence of writing. See

Affidavit in Opposition (Docket #23). See Hostcentric Technologies, Inc. v. Republic

Thunderbolt, LLC, 2005 WL 1377853, 5 (S.D.N.Y.2005) ("It is not a parties' subjective intent

that controls, but rather what the parties said (and /or did)."); Brodeur v. City of New York, 2005

WL 1139908, 3 (E.D.N.Y. 2005) ("Where a contract is unambiguous, a party's subjective intent

is irrelevant."); Communication of an intent not to be bound is required. Winston at 80.

In its opposition papers, Defendants cited case Ciaramella v. Reader's Digest

Ass'n Inc., 131 F.3d 3320 (1997), where the court declined to enforce an unexecuted settlement

agreement. The Ciaramella case is clearly distinguishable, in that the proposed settlement

agreement there stated that it was not to be effective until signed by the parties; that reservation

does not exist in the instant case. The Stipulation, in paragraph 10, provides that the signatures

will be covenants and warrants of the authorization and a representation to the other party to bind

the party to the terms of the Stipulation. See Statement on Motion To Enforce and Approve

Settlement Agreement: Exhibit D: Stipulation (Docket #19). The Stipulation does not include

language that the signature on the Stipulation is a condition without which it would not be

binding.

This Court finds that none of the parties here expressed a reservation of the right

not to be bound in the absence of writing.

### (2) Whether there has been partial performance of the contract

Despite the Defendants suggestion, the agreement was not conditioned on any resolution of the Defendants' pending litigation with Napoleon Barragan in Florida. However, the agreement between the parties, as represented in the Stipulation, in paragraph 8, provides that Defendants "… agree that any settlement that Claimants enter into with Napoleon Barragan in connection with the Florida litigation shall provide that he (Mr. Barragan) cannot seek contribution from the Liquidating Estate nor subrogate to the claims of the Claimants". Statement on Motion To Enforce and Approve Settlement Agreement: Exhibit D: Stipulation, ¶8. The Defendants agreed upon the language of the Stipulation and took steps to incorporate the requirement of the Stipulation in the failed Florida litigation settlement.

In his email of November 4, 2011, Mr. Morgenstern stated that he was waiting on clearance from Mr. Barragan's counsel on the waiver of contribution/subrogation issue. See Statement on Motion To Enforce and Approve Settlement Agreement: Exhibit C (Docket #19). Again, in the email from November 11, 2010, Mr. Morgenstern stated that he is just waiting for the stipulation between his client and Mr. Barragan to be finalized with the necessary waiver of claims from Mr. Barragan, which plaintiff's counsel required, and which seemed like it would be incorporated. Id. All communication and emails from Mr. Morgenstern indicated that the Defendants undertook steps to meet the requirement stipulated in paragraph 8 of the Stipulation. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d at 75-76 ("…partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect.").

Although a Florida settlement was not a condition of the agreement, the

Defendants undertook to obtain a waiver if they settled the Florida matter, and they proceeded to

seek such a waiver. The Court finds that the Defendants actions in regard to the Florida litigation

settlement constitute partial performance of the settlement and the Defendants' intent was to be

bound by the Stipulation.


**(3) Whether all of the terms of the alleged contract have been agreed upon**


On November 4, 2010, Mr. Morgenstern indicated that the agreement was

acceptable and there were no further open points for negotiation. <u>Statement on Motion To</u>

<u>Enforce and Approve Settlement Agreement: Exhibit C</u>. The November 17, 2010 email, stated

that Veronica Aquilar was prepared to sign the Stipulation, indicating that the Stipulation, as

memorialized, was reviewed and confirmed by his client and that the terms had been agreed

upon by his client. <u>Id</u>.; See <u>Statement on Motion To Enforce and Approve Settlement</u>

<u>Agreement: Exhibit E</u> (Docket #19).

In addition, the Report of Rule 26(f) Meeting (Docket #10), which was signed by

Mr. Morgenstern on November 22, 2010, states that the parties had reached a settlement in

principal and have documented the settlement.[1]

The Court finds that all of the terms of the Stipulation had been agreed upon.

---

[1] The Court does not accept Defendants' logic that Plaintiff's continuing with discovery as an indication of
her intent not to be bound; the Court accepts Plaintiff's actions as prudent compliance with this Court's Order.

**(4) Whether the agreement at issue is the type of contract that is usually committed to writing**

Although a settlement is usually committed to writing, drafting and re-drafting of an agreement, as here, can qualify as the writing. See Conway v. Brooklyn Unin Gas Co., 236 F.Supp.2d 241, 251 (E.D.N.Y.2002). In addition, the lack of signature on the relatively non-complex Stipulation does not invalidate the binding nature of the agreement or lessen the significance of the written memorization of the terms. See Walker v. City of New York, 2006 WL 1662702, 9 (E.D.N.Y.2006) ("It should be noted that some courts have considered an oral settlement agreement that was drafted and transmitted between parties to qualify as an actual writing; thus nullifying the need for the four prong Winston balancing test."). See also Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853, 9-10 ("…it would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written. …even if one were to find that this type of agreement should be in writing, it was the parties were not dealing with an oral agreement but one written in an email from Republic and accepted by an email from Hostcentric.").

The Court finds that the Stipulation agreed upon on November 4, 2010, constitutes written evidence of the binding agreement.

\*\*\*

Based on the analysis of the Winston's factors and totality of the evidence, the Court finds that the parties memorialized and entered into an agreement and intended to be bound by the agreement even without a document executed by the parties.

CONCLUSION

For the foregoing reasons, the Court finds that the settlement has been reached

between the parties on November 4, 2010 and it is hereby

Ordered, that the agreement is enforceable in the form as it was stipulated in the

Stipulation agreed upon; and it is

Ordered, that the Plaintiff shall promptly file an application for approval of the

Stipulation pursuant to the Bankruptcy Rule 9019 and local rules.



**Dated: March 10, 2011**
      **Brooklyn, New York**

_Joel B. Rosenthal_
    **Joel B. Rosenthal**
    **United States Bankruptcy Judge**